# In the United States Court of Federal Claims

No. 21-1169
Filed: January 21, 2022

| |
|---|
| **ECC CENTCOM CONSTRUCTORS, LLC,**<br><br>*Plaintiff*,<br><br>**v.**<br><br>**THE UNITED STATES,**<br><br>*Defendant.* |

*Roy Dale Holmes*, Cohen Seglias Pallas Greenhall & Furman, Philadelphia, PA, for Plaintiff.

*Bret Vallacher*, Trial Attorney, Commercial Litigation Branch, Civil Division, *Patricia M. McCarthy,* Assistant Director, *Martin F. Hockney, Jr.,* Acting Director, *Brian M. Boynton,* Acting Assistant Attorney General, U.S. Department of Justice, Washington, D.C., for Defendant.

**MEMORANDUM OPINION AND ORDER**

**TAPP, Judge.**

For the Court of Federal Claims to entertain jurisdiction over a Contracts Dispute Action, litigation must involve the same claims presented to the contracting officer. The sole issue here is whether Plaintiff, ECC CENTCOM Constructors, LLC ("ECC"), submitted the entirety of its claims to the Contracting Officer prior to this litigation. Before the Court is the United States' Motion to Dismiss Count I of the Complaint, Violation of the Duty of Good Faith and Fair Dealing, and damages to the extent ECC seeks $11,369,865.30. (Mot. to Dism., ECF No. 13).

The Court finds that because ECC submitted a certified claim for "failure to cooperate" based on the same operative facts alleged in Count I of its Complaint, ECC effectively presented the same claim to the Contracting Officer. However, because the certified claim does not assert "breach damages" directly related to the violation of good faith and fair dealing, any new theory of damages is outside of the Court's jurisdiction. Therefore, the United States' Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## I. Background[1]

ECC is a construction company headquartered in Delaware. (Compl. at 1, ECF No. 1). On September 11, 2013, the Army Corps awarded ECC a Task Order for the design and construction of the Transient Quarters and the Enlisted and Officer Dining Facilities in Manama, Bahrain (hereinafter "Task Order 6"). (*Id*. at 2). Task Order 6 required ECC to complete all work within 710 calendar days of receipt of the Notice to Proceed. (*Id*. at 3). On September 24, 2013, the Army Corps notified ECC that a bid protest filed in relation to Task Order 6 must be resolved before a Notice to Proceed could be issued. (*Id*.). As a result, the Army Corps instructed ECC "not to incur any costs associated with the Task Order." (*Id*.). ECC claims that because of this directive and the uncertain duration of the bid protest, ECC reassigned its intended "key personnel" to other projects. (*Id*.). On January 2, 2014, once the pending bid protest resolved, the Army Corps issued the Notice to Proceed, establishing a contract completion date of December 13, 2015. (*Id.*).

On January 9, 2014, ECC gave the Notice to Proceed to its subcontractor to "begin site survey work, the geotechnical survey, to do test piles, and to install temporary fencing, project office buildings, utilities, and other mobilization activities." (Compl. at 4). On the same date, ECC also informed the Army Corps' Project Manager of its plan to commence work the week of January 20, 2014 and requested authorization for approval of the substituted ECC staff. (*Id.*). ECC requested that authorization because it had reassigned personnel due to the bid protest. (*Id*.). The Army Corps did not immediately approve the personnel ECC assigned to oversee pre-construction and mobilization activities. (*Id*. at 4–5). On March 5, 2014, the Contracting Officer ultimately denied ECC's request, stating that ECC could only start initial mobilization activities with key personnel listed in its initial Technical Proposal. (*Id*. at 5).

On March 13, 2014, ECC submitted an additional request for key personnel substitution, but the Army Corps did not respond. (*Id*.). After weeks of back and forth regarding personnel change requests, on April 1, 2014, the Contracting Officer approved the key personnel requests on an interim basis. (Compl. at 6). However, on April 9, 2014, the Army Corps' Contracting Officer disapproved ECC's proposed permanent Project Manager because he was also managing an adjacent project. (*Id*.).

On April 16, 2014, ECC informed the Contracting Officer that previously approved interim personnel had not been approved for visas because the "immigration system had been off-line for the month of March." (*Id*.). This led ECC to submit a series of renewed personnel change requests. (*Id*. at 6–7). Per ECC's Complaint, the Army Corps repeatedly delayed approving most of those requests, resulting in a delay to completion of the contract of

---

[1] In considering the pending Motion to Dismiss, the Court assumes the facts alleged in Plaintiff's Complaint, (ECF No. 1), to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). This summary does not constitute findings of fact but is simply a recitation of the allegations.

approximately 110 days.[2] (*Id*. at 7–8, 11). ECC further alleges that the delay pushed the work into severe winter weather that would have otherwise been avoided, further delaying completion of the contract. (*Id*. at 8). In addition, ECC alleges that "nation-wide shortages" of sand and aggregate, as well as unusually severe summer weather in 2015, caused an additional delay of 59 days. (Compl. at 9–11).

On December 29, 2015, the Army Corps issued Unilateral Modification No. 16, adding a "sanitary lift station" to the Task Order 6 project. (*Id*. at 12). This Modification did not extend the time for the increased scope of work but ultimately required an additional 71 days to complete. (*Id*.). On December 30, 2015, the Army Corps issued Unilateral Modification No. 17, which changed the guest bathroom doors in all the Transient Quarters from wood to steel. (*Id*.). This Modification provided no expansion of costs for performance or extensions of time for delivery and installation, both of which ECC asserts were required for completion. (*Id*. at 13). The project was thus delayed by an additional 26 days. (*Id*.). On January 22, 2016, the Army Corps issued Unilateral Modification No. 18, changing all the exterior lighting from High Pressure Sodium to LED. (Compl. at 12). This Modification increased the contract amount by $33,888 but did not include a time extension and ultimately caused a seven-day delay. (*Id*.).

On December 30, 2015, the Army Corps issued a Show Cause Letter requiring ECC to provide a recovery schedule and a rationale for the delays to the Task Order 6 project through that date. (*Id*. at 16). ECC responded on January 9, 2016, tendering a recovery schedule and explaining the events that caused delays on the Task Order 6 project. (*Id*.). As of March 2016, ECC alleged that its progress stood at 67 percent complete. (*Id*.). On April 19, 2016, the Contracting Officer terminated ECC for default. (*Id*.).

ECC submitted a certified claim on December 31, 2019, seeking "time extension of 273 days, withdrawal of all assessed liquidated damages, delay damages of $2,534,827.23, a conversion of the wrongful termination for default to one for convenience, and withdrawal and reevaluation of the [Contractor Performance Assessment Reporting System (CPARS)] rating." (Mot. to Dism., Ex. A10)[3]. On February 25, 2020, an Army Corps' Contracting Officer informed ECC that a Final Decision would not be issued for the certified claim. (Compl. at 1). This litigation ensued.

---

[2] The Court is unclear how ECC arrives at this number of days delayed as a result of Count I. Only 107 days are accounted for. (Compl. at 7 ("[T]he start of critical project activities, including but not limited to site survey and geotechnical investigation, and associated design work was delayed at least **62 days**."; "[Subcontractor] was only able to mobilize one of its two planned piling crews, causing further critical path delays of at least **45 days**.") (emphasis added)).

[3] "A_" refers to the consecutive pagination at the bottom of each page of the United States' Exhibit attached to the pending motion.

## II. Discussion

ECC's Complaint brings the following counts: (1) Violation of the Duty of Good Faith and Fair Dealing; (2) Damages Due to Nationwide Material Shortages Exacerbated by Other Delays; (3) Improper Issuance of Unilateral Modifications; (4) Improper CPARS Rating; (5) Improper Termination for Default. (Compl. at 3–16). Based on these allegations, ECC believes it is entitled to judgment on Counts I, II and III for contractual damages of $2,534,827.23 and 273 days of time extension on its December 31, 2019, certified claim; breach damages of $11,369,865.30 due "to the violation of the duty of good faith and fair dealing asserted in its December 31, 2019, certified claim;" withdrawal of the improperly issued CPARS performance rating; and conversion of the improper termination for default to a termination for convenience. (*Id.* at 17).

The United States' Motion to Dismiss is squarely concerned with this Court's jurisdiction to entertain ECC's claim for: "breach damages of $11,369,865.30 due to Defendant's violation of the duty of good faith and fair dealing." (Mot. to Dism. at 2 (citing Compl. at 17)). The United States argues that, despite ECC's assertion in its Complaint, this claim for relief and resulting damages were never included in ECC's December 31, 2019 certified claim. (Mot. to Dism. at 2).

ECC rebuts the United States' position, arguing that a comprehensive comparison of the language in the certified claim and the Complaint reveals that the Contracting Officer was presented with a certified claim for breach of the duty of good faith and fair dealing, ultimately mirroring ECC's Complaint. (Pl.'s Resp. at 1–2, ECF No. 21). ECC likewise maintains that damages can be modified from those asserted in the certified claim if those damages are based upon the same operative facts; thus, it was not required to submit identical damages to the Contracting Officer. (*Id.*).

The Court finds that, because Count I—Violation of Good Faith and Fair Dealing—is based on the same operative facts as ECC's certified claim, ECC gave adequate notice of its claim by asserting a claim for "failure to cooperate." However, the certified claim explicitly requests "delay damages," and no damages specific to the Army Corps' failure to cooperate. The Court does not have jurisdiction to consider a different type of recovery not previously presented to the Contracting Officer.

### *A. Legal Standards*

Under RCFC 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). When faced with a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1), the Court must assume that all facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Moreover, the Court may look to evidence outside of the pleadings to ascertain the propriety of its exercise of jurisdiction over a case. *Rocovich v. United States*, 18 Cl. Ct. 418, 421 (1989), *aff'd in relevant part* 933 F.2d 991, 994 (Fed. Cir. 1991); *Martinez v. United States*, 281 F.3d 1376 (Fed. Cir. 2002).

*B. Violation of Good Faith and Fair Dealing*

The Court first considers whether Count I, Violation of Good Faith and Fair Dealing, was properly alleged to the Contracting Officer before this litigation. "An action brought before the Court of Federal Claims under the [CDA] must be based on the same claim previously presented to and denied by the contracting officer." *Kansas City Power & Light Co. v. United States*, 131 Fed. Cl. 161, 165 (2017) (citing *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (internal quotation marks and citation omitted)). "This requirement necessarily . . . prohibits contractors from raising any new claims in court which were not first presented to the contracting officer." *Affiliated Constr. Grp., Inc. v. United States*, 115 Fed. Cl. 607, 612 (2014). A claim need not "be submitted in any particular form or use any particular wording," but it must provide "a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim." *Scott Timber*, 333 F.3d at 1365 (quotations omitted).

These jurisdictional requirements are in place to provide the contracting officer "an ample pre-suit opportunity to rule on a request, knowing at least the relief sought and what substantive issues are raised by the request." *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1006 (Fed. Cir. 2015). As a result, if claims in the complaint "are not the same claims as those presented to the contracting officer in the certified claim, this court has no jurisdiction under the CDA to consider them." *E&E Enterprises Glob., Inc. v. United States*, 120 Fed. Cl. 165, 172 (2015) (internal quotation marks and citation omitted).

The duty of good faith and fair dealing is implied in all contracts with the Federal Government and requires parties "not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract." *Metcalf Const. Co. v. United States*, 742 F.3d 984, 990–91 (Fed. Cir. 2014). The United States breaches this contractual obligation when it eliminates or rescinds contractual benefits "through action that is specifically designed to reappropriate the benefits and thereby abrogate the government's obligations under the contract." *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014). To establish a claim for breach of the implied duty of good faith and fair dealing, the contractor must establish that the Government acted in a way "specifically designed to reappropriate the benefits the other party expected to obtain from the transaction, thereby abrogating the [G]overnment's obligation under the contract." *Precision Pine & Timber, Inc. v. United States*, 596 F.3d 817, 828 (Fed. Cir. 2010).

The United States argues that the Complaint's claim regarding an alleged breach of the duty of good faith and fair dealing is absent from the certified claim. (*Compare* Mot. to Dism. Ex. A1–10 *with* Compl. at 8, 11, 14). Indeed, the certified claim does not utilize the magic words "good faith and fair dealing." However, a contractor need not use the exact terminology of a breach of the duty of good faith and fair dealing in its certified claim for the Court of Federal Claims to have jurisdiction to adjudicate it. *Walsh Constr. Co. v. United States*, 132 Fed. Cl. 282, 288 (2017) (citing *Scott Timber Co.*, 333 F.3d at 1365–66).

On the first page of the certified claim, ECC states that it "suffered these days delay and corresponding overhead damages as a result of (1) [the Army Corps'] failure to cooperate; (2) nationwide material shortages exacerbated by unusually severe weather and (3) directed changes to the Contract work." (Mot. to Dism. Ex A1). The "implied duty of good faith and fair dealing"

is also referred to as the "implied duty not to hinder and the implied *duty to cooperate*." *Precision Pine & Timber, Inc.*, 596 F.3d at 827 (emphasis added). Based on this basic tenet of contract law, it is entirely inept to say that an allegation of failure to cooperate would deprive a contracting officer of adequate notice of the contractor's allegation of violation of good faith and fair dealing. Thus, the question becomes whether the claim is now based on a different set of operative facts than what was before the Contracting Officer.

The United States' contention that ECC's certified claim is based on a different set of operative facts is largely reliant upon ECC's objection to the final determination of personnel decisions rather than the delayed decision-making process. (Def.'s Reply at 4, ECF No. 25). That distinction is trivial in this case. ECC's certified claim states that "[d]espite their qualifications and experience, [the Army Corps] repeatedly and unreasonably rejected qualified interim personnel, causing delay to the start of Project activities." (Mot. to Dism. Ex. A2). A contracting officer's failure to act necessarily deems a request denied. *Kellogg Brown & Root Servs., Inc. v. Murphy*, 823 F.3d 622, 625 (Fed. Cir. 2016) ("On May 2, 2012, KBR filed a certified claim with the Army for this amount. The contracting officer did not act on the claim, thereby placing it in "deemed denied" status.").

Further, Count I of the Complaint does allege wrongful denial in approval of ECC personnel. (*See* Compl. at 5 ("On March 5, 2014, the CO denied ECC CENTCOM's request, and stated that ECC CENTCOM could only start initial mobilization activities with key personnel listed in the Technical Proposal . . .."); *see also id.* at 6 ("On April 9, 2014, [the Army Corps'] Contracting Officer disapproved ECC CENTCOM's proposed permanent Project Manager . . ..")). As such, the Court finds that Count I of the Complaint alleges the same "operative facts" that were considered by the Contracting Officer—that the Army Corps failed to cooperate based on its personnel decisions.

Under these circumstances, an allegation of "failure to cooperate" provided the Contracting Officer with clear notice that ECC intended to pursue a claim that the Army Corps violated its obligation of good faith and fair dealing. Count I of the Complaint and the certified claim are based on the same operative facts. Therefore, the Court turns to whether the Contracting Officer was provided with clear notice of the amount of recovery.

### *C. Damages for Breach of Duty of Good Faith and Fair Dealing*

The United States contends that the Complaint's demand for $11,369,865.30 in damages for a breach of the duty of good faith and fair dealing is not found in the certified claim. (*Compare* Mot. to Dism. Ex. A1–85 *with* Compl. ¶¶ 53, 75, 94). Under certain circumstances, "in a direct access action in the Claims Court, a contractor may increase the amount of his claim . . .." *Santa Fe Eng'rs, Inc. v. United States*, 818 F.2d 856, 858 (Fed. Cir. 1987). That said, the increased sum must "spring from the same certified claim. Plaintiff may not seek damages for a new claim—a claim not yet submitted to and decided by the contracting officer." *Tecom, Inc. v. United States*, 732 F.2d 935, 937–38 (Fed. Cir. 1984). While simply adjusting the amount of damages based on the evidence developed during litigation does not create a separate claim, courts have "differentiated claims seeking different types of remedy, such as expectation damages versus consequential damages." *Scott Timber Co.*, 333 F.3d at 1365.

This Court may exercise jurisdiction over an increased claim if:

> [T]he increase in the amount of the claim is based on the same set of operative facts previously presented to the contracting officer and the contractor neither knew nor reasonably should have known, at the time when the claim was presented to the contracting officer, of the factors justifying an increase in the amount of the claim.

*Al-Juthoor Contracting Co. v. United States*, 129 Fed. Cl. 599, 619 (2016) (quotations omitted). Hence, where the value of a claim increase is instead based on new information available only after the claim was submitted to the contracting officer, a contractor is entitled to increased damages so long as the damages stem "from the same operative facts as the original claim" and seek "the same categories of relief." *Modeer v. United States*, 68 Fed. Cl. 131, 137 (2005) (emphasis added), *aff'd,* 183 Fed. Appx. 975 (Fed. Cir. 2006) (citing *Cerberonics, Inc. v. United States*, 13 Cl. Ct. 415, 418 (1987)).

The Court of Appeals for the Federal Circuit has reasoned that the requirement that a submitted claim must "adequately specify both the amount sought and the basis for the request" necessarily implies that courts "should treat requests as involving separate claims if they either request different remedies (whether monetary or non-monetary) or assert grounds that are materially different from each other factually or legally." *K-Con*, 778 F.3d at 1005; *cf. Scott Timber*, 333 F.3d at 1365 (two claims are the same if they "arise from the same operative facts, [and] claim essentially the same relief"). The Court thus analyzes whether the increased sum of relief is based on a new theory of damages. Here, the good faith and fair dealing claim in the Complaint requests remedies that differ from those sought in the certified claim letter.

In its Request for Relief section of the certified claim, ECC states:

> In total, [ECC] is entitled to 273 days of time extensions on the Project as a result of both compensable and excusable delays as well as directed changes. Had [ECC] properly been given the time extensions, the contract completion date would have been extended to September 2016, which was an achievable completion date given [ECC]'s rate of progress at the time of termination. To date, [the Army Corps] has not recognized any time extension. Thus, [ECC] seeks a time extension of 273 days, withdrawal of all assessed liquidated damages, delay damages of $2,534,827.23, a conversion of the wrongful termination for default to one for convenience, and withdrawal and reevaluation of the CPARS rating.

(Mot. to Dism. Ex. A10). In contrast, the Conclusion and Demand for Relief section of the Complaint states:

> Plaintiff requests the Court to find that [ECC] is entitled to a judgment on Counts I, II and III for contractual damages of $2,534,827.23 and 273 days of time extension on its December 31, 2019 certified claim; *and for breach damages of $11,369,865.30 due to [the Army Corps'] violation of the duty of good faith and fair dealing asserted in its December 31, 2019 certified claim*;

> on Count IV, for withdrawal of the improperly issued CPARS performance rating as requested in its December 31, 2019 certified claim; on Count V, for conversion of the improper termination for default to a termination for convenience; and that [ECC] is entitled to interest, and costs as allowed by law, and such other relief as the Court deems appropriate.

(Compl. at 17 (emphasis added)). The request for "breach damages" specific to the violation of good faith and fair dealing is conspicuously missing from ECC's certified claim. Notably, in its Complaint, ECC characterizes its certified claim as requesting the "amount of $2,534,827.23 for delay damages, and breach damages resulting from 273 days of delay[.]" (*Id.* at 1). That phrasing is also missing from the certified claim.

The good faith and fair dealing claim in the Complaint requests "different remedies" on its face because it requests an additional $11,369,865.30 in "breach damages," (Compl. ¶¶ 53, 75, 94), whereas the certified claim does not request any monetary award other than the $2,534,827.23 in "delay damages" featured in both the Complaint and certified claim. (*Compare* Mot. to Dism. A10 *with* Compl. at 17). In short, the certified claim does not seek any amount for the "failure to cooperate." The "absence of a sum certain is fatal to jurisdiction under the CDA." *Securiforce Int'l Am., LLC v. United States*, 879 F.3d 1354, 1359–60 (Fed. Cir. 2018) (internal quotation marks and citations omitted).

The request for relief in the certified claim was not sufficient to alert the Contracting Officer of the amount certain for "breach damages." As a result, ECC's new request for recovery of "breach damages" "has not yet been considered by the contracting officer, and accordingly cannot come within [this Court's] subject-matter jurisdiction." *Affiliated Constr. Grp*., 115 Fed. Cl. at 614. Because exercising jurisdiction would "subvert the statutory purpose of requiring contractors first to submit their claims to the Contracting Officer to allow the CO to receive and pass judgment on the contractor's entire claim," *Scott Timber*, 333 F.3d at 1366 (internal quotation marks and citation omitted), the Court must dismiss the complaint to the extent it seeks damages specific to breach of the duty of good faith and fair dealing.

## III. Conclusion

Although ECC did not precisely articulate a breach of the duty of good faith and fair dealing in its certified claim, the factual recitations therein described the Army Corps' alleged failure to engage in reasonable contract administration. However, because ECC failed to request recovery specific to that breach, it cannot request them for the first time here. Thus, the United States' Motion, (ECF No. 13), is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**IT IS SO ORDERED.**



s/ David A. Tapp
DAVID A. TAPP, Judge